## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

_____

**ANTHONY ARCHIBEQUE**,

       Plaintiff,

v.                                                                            No. CIV 10-546 BB/WPL

**DEPARTMENT OF PUBLIC SAFETY, ET AL.,**

       Defendants.


### <u>MEMORANDUM OPINION</u>

This matter comes before the Court for consideration of two motions for summary judgment filed by the remaining Defendants in this case (Docs. 63, 67).  One of the motions (Doc. 67) is styled as a motion to dismiss, but includes exhibits for the Court's consideration; the Court has considered those exhibits, as well as the exhibits submitted by Plaintiff in response, and therefore treats the motion as a motion for summary judgment.  The Court has considered the submissions of the parties and the applicable law.  Having done so, the Court will grant each motion in part and deny each motion in part.

As the parties are aware, this case arises out of a traffic stop which turned into an arrest. Plaintiff filed suit claiming that Defendants used excessive force against him during the arrest, unlawfully searched and seized his vehicle, and committed the tort of spoliation of evidence. Defendant Harvey, a New Mexico State Police officer, performed the stop of Plaintiff's vehicle and applied most of the force about which Plaintiff complains.  Defendant Becton, an officer with the Albuquerque Police Department, arrived later in a separate patrol unit.   The instant motions for summary judgment address the claims Plaintiff has raised against both Defendant Harvey and Defendant Becton.

**Standard of Review**

Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Medina v. Income Support Div.*, 413 F.3d 1131, 1133 (10th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)). In response, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith*, 475 U.S. 574, 587-88 (1986). To avoid summary judgment, the nonmoving party may not rest upon the mere allegations in the pleadings but must show, at a minimum, an inference of the existence of each essential element of the case. *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016-17 (10th Cir. 2001) (citing *Hulsey v. K-Mart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)). When viewing the evidence, the Court must draw reasonable inferences in favor of the non-moving party. *Matsushita*, 475 U.S. at 587. The Court will address each of the motions separately, keeping the above standard in mind.

**DISCUSSION**

**Defendant Harvey Motion for Summary Judgment:**[1] Defendant Harvey requests summary judgment on all three of Plaintiff's claims – use of excessive force, unlawful search and seizure, and spoliation of evidence. The Court has already ruled that the New Mexico Tort Claims Act, NMSA §§ 41-4-1 *et seq.*, does not waive immunity for a claim of spoliation of evidence. Furthermore, Plaintiff agrees that the unlawful-search claim should be dismissed against Defendant Harvey if he did not participate in the search of Plaintiff's vehicle. The only

---

[1]This motion was actually filed by Defendant Harvey as well as two agency Defendants, the Department of Public Safety and the State of New Mexico Police Department. All claims against the agency Defendants were dismissed in an earlier opinion, leaving only Defendant Harvey as the proponent of this motion.

evidence presented to the Court indicates a different officer, not Defendant Harvey, performed the search of the vehicle.  For these reasons, summary judgment will be granted on the § 1983 claim for unlawful search and seizure, and the state-law claim for spoliation of evidence.[2]

Excessive force claims such as Plaintiff's are governed by the Fourth Amendment's "objective reasonableness" standard. *See Cavanaugh v. Woods Cross City*, 625 F.3d 661, 664 (10th Cir. 2010).  Under this standard the Court must balance the nature and quality of the intrusion on Plaintiff's Fourth Amendment interests against the government's countervailing interests.  *See id.*  This balancing test decides the ultimate question with regard to this claim -- whether Defendant Harvey's use of force was reasonable given the severity of Plaintiff's suspected crime, the immediate threat to Defendant Harvey or to others, and the extent to which Plaintiff was either actively resisting arrest or attempting to evade arrest by flight. *See id.*  It is axiomatic that the Court must judge the situation "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).  The Court must recognize that Defendant Harvey was forced to make split-second decisions about the amount of force that was necessary in the situation at hand.  *See id.*  On the other hand, as noted above, at the summary-judgment stage the Court is required to view the evidence submitted in the light most favorable to Plaintiff rather than to Defendant Harvey.

---

[2]At the pretrial conference, Plaintiff indicated the unlawful search and seizure claim was predicated (at least the seizure part) on the seizure of his person, rather than his vehicle.  The Court has reviewed the amended complaint filed in this case [Doc. 35] and does not find such a claim in it.  Instead, Count IV claims that Defendants violated Plaintiff's constitutional rights by "unlawfully searching and seizing [Plaintiff's] **vehicle** without consent or a valid warrant..." [Doc. 35, p. 10 (emphasis added)]  Thus, the Court need not address Plaintiff's newly-raised claim for unlawful seizure of his person.  In addition, as discussed below, there was clearly probable cause to arrest Plaintiff for driving under the influence, so that summary judgment on this newly-raised claim would be appropriate on the merits in any event.  At trial, Plaintiff will not be allowed to litigate his newly-raised claim for unlawful arrest or seizure of his person.

The initial step under the Tenth Circuit's analytical approach in *Cavanaugh* and other cases is to determine what force the officer allegedly used during the arrest.  *See* 625 F.3d at 665-66.   In this case, Plaintiff alleges several different uses of force by Defendant Harvey at different times.  First, he claims he was slammed against a concrete barrier when Defendant Harvey first handcuffed him outside his vehicle.  He also claims Defendant Harvey raised his arms high behind his back after he was handcuffed, causing him great pain.  He maintains Defendant Harvey subsequently used a Taser on him three times, including once in the genitals, while he was partially inside Defendant Harvey's patrol unit.  Plaintiff was then placed inside the unit and, after he allegedly passed out due to pain from the Tasing, he claims he woke up to find himself on his back, with Defendant Harvey choking him until he thought he was going to die.  Finally, after Plaintiff passed out again due to the choking, he again woke up and was lying face-first on the ground, with blood on his face; Defendant Becton had his knee on Plaintiff's back, and was allegedly pulling Plaintiff's handcuffed arms up behind him, causing still more pain.  The Court will apply the balancing test to each of these alleged uses of force to determine whether there is a genuine issue of material fact as to the existence of a constitutional violation, such that summary judgment would be inappropriate at this stage of the proceedings.[3]

---

[3]The Court notes this case is unlike most summary-judgment cases, because in addition to deposition testimony and other documentary evidence, there is a videotape of the incident in question.  This is significant because the Supreme Court has held that where a plaintiff's version of events differs from what is clearly visible on a videotape, the plaintiff's version must be rejected, even at the summary-judgment stage.  *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007).  This is because where one party's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Id.* at 380.  Therefore, as discussed below, in ruling on the motions for summary judgment the Court has credited the videotape rather than a party's version of the facts, wherever the videotape obviously contradicts those alleged facts.

4

The first factor to consider in evaluating Defendant Harvey's use of force is the severity of Plaintiff's suspected crime.  Plaintiff agrees that driving under the influence is a serious crime.  However, he argues there are questions about whether he actually committed that crime. He points out that he told Defendant Harvey at the scene that he only had one beer to drink, and confirmed that statement at his deposition.  [Videotape; Doc. 75, Exh. 1, p. 70]  At his deposition he also stated that he had not consumed any illegal substances, and that he "felt" he had passed the field sobriety test administered by Defendant Harvey.  [Doc. 75, Exh. 1, pp. 70, 76]  This is an instance, however, in which the videotape evidence controls over Plaintiff's assertions.  The videotape plainly shows Plaintiff acting as if he is under the influence of some substance, whether that substance was alcohol or something else.  For example, he had trouble on both the one-legged balancing test and the heel-to-toe test; he slurred and exaggerated his speech rather than speaking in normal tones; he appeared to have some difficulty forming his thoughts and words; rather than immediately responding to Defendant Harvey's instructions, he begged Defendant Harvey several times to give him a break, at one point exclaiming, "I give you my life!"; he had difficulty following Defendant Harvey's instructions concerning the field sobriety test; and he refused to turn around to be handcuffed.  At minimum, Defendant Harvey's observation of Plaintiff's behavior and demeanor gave him probable cause to arrest Plaintiff for driving under the influence, and no reasonable jury could find otherwise.  *See Scott v. Harris, supra,* 550 U.S. at 380.  Plaintiff's arguments and submissions, therefore, do not raise an issue of fact as to whether Defendant Harvey reasonably suspected Plaintiff of committing the serious offense of driving under the influence.

The second factor examined in the balancing test is the extent of the threat, if any, posed by Plaintiff to Defendant Harvey or to others.  Viewing the evidence in the light most favorable to Plaintiff, he initially posed little direct threat to Defendant Harvey.  The videotape does not

show him being physically threatening toward Defendant Harvey or anyone else before he was arrested.  Later, when he was first placed in the patrol car and then removed from it, he was not visible on the videotape.  However, neither Defendant Harvey nor Defendant Becton testified that Plaintiff became violent before the Taser was used on him, after which he kicked Defendant Harvey several times, either in the arm, stomach area, or chest.  [Doc. 65, pp. 57-59, 61; Doc. 67, Exh. 2, pp. 47-48]  At least up to the point of the initial use of the stun gun, therefore, Plaintiff was not physically threatening anyone.[4]  After the application of the Taser, when Plaintiff began kicking Defendant Harvey, he obviously did pose a threat of at least some harm to Defendant Harvey.  Although Plaintiff testified he did not remember kicking Defendant Harvey, at the summary-judgment stage testimony concerning a lack of memory is not sufficient to raise a genuine issue of fact as to whether a certain event occurred.  *See, e.g., Wertish v. Krueger*, 433 F.3d 1062, 1065 (8th Cir. 2006) (officer's version of events was only version available, where plaintiff could not remember what happened); *Haag v. United States*, 485 F.3d 1, 3 (1st Cir. 2007) (government's evidence of contents of envelope was accepted for summary-judgment purposes, where other party testified only that he could not remember whether certain documents were in envelope).  Thus, the "threat" factor varies in weight depending on whether one is considering Defendant Harvey's use of force prior to the initial use of the Taser, or the force used after that event.

---

[4]The Court notes Defendant's argument that the vehicles were stopped at the side of a high-speed highway, and that Plaintiff could have run into the highway, endangering other motorists, himself, and any pursuing officer, if he had managed to exit Defendant Harvey's patrol unit and take off running.  Although there is evidence that he was pushing away and trying to get away from Defendant Harvey [Doc. 65, p. 49], there is no evidence he made any move to run into traffic.  This evidence is too speculative, especially given the summary-judgment-evidence-review standard, to support a finding that Plaintiff was physically threatening Defendant Harvey or others before he was first Tased.

The third factor to be analyzed is the extent to which Plaintiff was actively resisting arrest or attempting to evade arrest by flight.  The videotape shows that prior to the initial handcuffing, Plaintiff refused to obey Defendant Harvey's repeated instructions to turn around so the handcuffs could be applied.   Harvey then grabbed Plaintiff's wrist, at which point Plaintiff attempted to pull away from Harvey's grasp.  In response, Defendant Harvey pulled hard on Plaintiff's wrist, sending him stumbling into a concrete barrier.  Harvey pinned Plaintiff against the barrier and raised Plaintiff's arms behind his back in order to apply the handcuffs. Once the handcuffs were applied, Defendant Harvey walked Plaintiff to the patrol unit, at which point Plaintiff and Defendant Harvey passed out of range of the video portion of the recording. From that point forward, therefore, the evidence the Court will consider consists of the audio recording, Plaintiff's deposition testimony, and the deposition testimony of Defendant Harvey, Defendant Becton, and a non-Defendant third party who was in Defendant Becton's unit as a ride-along.

Once Plaintiff and Defendant Harvey reached the patrol unit, there is a divergence of evidence about what occurred next.  Defendant Harvey testified that Plaintiff refused to get into the back seat of the unit and was pushing against Harvey as if trying to get away, so that Harvey had to pin Plaintiff against the unit with his body.  [Doc. 65, pp. 49, 56-57]  Defendant Harvey maintains he then warned Plaintiff at least five or six times to get into the vehicle or he would use the Taser.  [*Id.* p. 56]  Plaintiff, on the other hand, claims he was already sitting down sideways on the back seat because Defendant Harvey had pushed him down, and that only his legs were out of the unit.  [Doc. 67, Exh. 3, pp. 83-86]  He also states he could not get into the unit as ordered to by Defendant Harvey, because Harvey was standing between his legs, preventing him from pulling them into the unit.  [*Id.* pp. 86, 222]  The audio portion of the videotape is inconclusive; there are a number of commands from Defendant Harvey, warning

7

Plaintiff to get into the vehicle or Defendant Harvey would use the Taser.  In response to each command, Plaintiff is heard remonstrating with Defendant Harvey, saying things like "I didn't do nothing!  Please!"  Finally, a crackling sound which the Court presumes was the Taser is heard.  However, the audio portion does not reveal either Plaintiff's location or Defendant Harvey's prior to the first application of the Taser, and does not establish whether Harvey was interfering with Plaintiff's ability to follow his  command to get into the vehicle.[5]   Based on the evidence presented to the Court, therefore, there is a genuine dispute of fact as to whether Plaintiff was resisting Defendant Harvey's attempts to place him in the patrol unit.

There are also disputes of fact as to Plaintiff's actions after the Taser was first used.  As discussed above, the undisputed evidence shows that Plaintiff kicked Defendant Harvey after the stun gun was first used on him.  Following that episode of kicking, however, the stories of the parties diverge again.  Defendant Harvey and the ride-along witness ("Adrian") testified that once Defendant Harvey had used the Taser again (and perhaps a third time) and shut Plaintiff inside the patrol unit, Plaintiff began to kick the back window of the patrol unit.  [Doc. 65, pp. 75-78;  Doc. 67, Exh. 4, p. 37]  They also testified that Plaintiff attempted to "slip his  cuffs" by maneuvering his handcuffed hands under his feet to the front of his body.  [*Id.;* Doc. 66, pp. 38-40]  Plaintiff, on the other hand, denied kicking the window and denied trying to slip his cuffs. [Doc. 67, Exh. 3, pp. 98, 230]  It is undisputed, however, that Defendant Harvey decided to remove Plaintiff from the patrol unit.  Plaintiff does not remember how he was removed, as he says he blacked out from pain after the Taser was applied to his genitals. [Doc. 66, Exh. 2, p. 96]

---

[5]For example, Plaintiff did not say anything audible indicating that he could not get into the vehicle, or that Defendant Harvey was obstructing him.  This omission, in combination with Plaintiff's repeated loud protests that he had not done anything wrong, is some evidence that Plaintiff was refusing to get into the vehicle rather than being prevented from doing so. However, it is not conclusive, and therefore cannot override Plaintiff's testimony that he could not obey Defendant Harvey's commands because Harvey was preventing him from complying.

According to Defendant Harvey as well as Adrian, Plaintiff was struggling and squirming as Defendant Harvey removed him from the vehicle, so much so that Defendant Harvey lost his grip and Plaintiff fell forward on his face.  [Doc. 65, pp. 81, 94; Doc. 66, pp. 38-40]

In sum, there is undisputed evidence that at certain times during the encounter, Plaintiff refused to obey Defendant Harvey's commands, kicked Defendant Harvey, and struggled and squirmed while being removed from the patrol unit.  The evidence is disputed as to whether Plaintiff refused to get into the patrol unit before the Taser was employed, or whether he was prevented from doing so by Defendant Harvey.  The evidence is also disputed as to whether he kicked the window of the patrol unit, and whether he attempted to slip his cuffs.

The final step in the process requires the Court to balance the above factors and determine whether Defendant Harvey is entitled to summary judgment with respect to the various uses of force involved in this case.  As set out above, the first use of force occurred when Plaintiff refused to turn around to be handcuffed, while he was standing between his vehicle and the patrol unit.  Since Plaintiff was refusing to obey Defendant Harvey's lawful command, Defendant Harvey was entitled to use a certain degree of force to effect the handcuffing.  *See Lundstrom v. Romero*, 616 F.3d 1108, 1126 (10th Cir. 2010).  Plaintiff contends Defendant Harvey "slammed" him against the concrete barrier and either bruised or scratched his chest, but the videotape indicates no violent "slamming" occurred.  Instead, Plaintiff was pulled forward with some force and stumbled up against the barrier, at which point Defendant Harvey held him against the barrier with some force while placing the handcuffs on his wrists.  It is apparent that Plaintiff suffered pain from this process, and may indeed have incurred a scratch or bruise. However, given his resistance to Defendant Harvey's orders and to the necessary handcuffing, no reasonable jury could find that the amount of force used by Defendant Harvey was unconstitutional.

Furthermore, the same is true of Plaintiff's claim that Defendant Harvey raised his arms so high behind his back that it amounted to an unreasonable use of force. The videotape, while somewhat blurry, certainly does not show Plaintiff's arms being raised for a long period of time or to an acute angle. Plaintiff could not even tell how high his arms were raised, and did not describe the type of unbearable pain that might rise to the level of excessive force. Instead, at most the pain was temporary and not unusually severe; this type of alleged injury is not enough to raise a question for the jury, at least where (as here) the arresting officer had a right to use force to effect a handcuffing. *See, e.g., Grauerholz v. Adcock,* 51 Fed.Appx. 298, 300 (10th Cir. 2002) (no constitutional violation where plaintiff's shoulder pain was temporary and her other injuries consisted of bruises on her forearm and thumb).

The next use of force at issue came after Plaintiff was handcuffed, and had been led to the patrol unit. This force consisted of Defendant Harvey's use of the Taser, more than once, on Plaintiff. A genuine issue of material fact has been raised as to these uses of the Taser. If Plaintiff's version of events is true, Defendant Harvey was preventing him from getting into the patrol unit even as he threatened to use the Taser on him. This would mean the use of the Taser was unnecessary to obtain Plaintiff's compliance with Defendant Harvey's request, and was simply a gratuitous infliction of severe pain upon Plaintiff.[6] Where the infliction of pain upon an arrestee is not necessary to accomplish legitimate law-enforcement objectives, a jury could find such infliction to be a violation of the Fourth Amendment. *See, e.g., Johnson v. Dist. of*

---

[6]Defendant Harvey points out that he used the Taser in "contact" mode rather than "dart" mode. Courts have recognized that employing a Taser in contact mode, also called "touch" or "drive-stun" mode, is considered a lesser use of force than using one in dart mode. *See Brooks v. City of Seattle,* 599 F.3d 1018, 1026-27 (9th Cir. 2010). However, a Taser employed without the darts still discharges 50,000 volts. [Doc. 65, p. 55] It causes a great deal of pain, although that pain may be temporary and localized. *Brooks*, 599 F.3d at 1027-28.

*Columbia*, 528 F.3d 969, 976-77 (D.C. Cir. 2008) (officer's use of force violates Fourth Amendment if it serves no governmental interest; "[f]orce without reason is unreasonable.").

It should also be pointed out that there is an issue of fact as to whether Defendant Harvey deliberately used the Taser on Plaintiff's genitals, an especially sensitive part of the body. Defendant Harvey testified that he was trying to apply the Taser to Plaintiff's stomach. [Doc. 65, p. 66] Plaintiff, on the other hand, testified that Defendant Harvey looked "straight at" Plaintiff, right at his eyes, and then "hit me right in my private parts..." [Doc. 66, Exh. 2, pp. 82-83, 94-95] From Plaintiff's testimony a jury could conclude that Defendant Harvey did not act inadvertently, but deliberately applied the Taser to Plaintiff's groin. The jury could also conclude that even if the use of a Taser was justified under the circumstances, deliberately causing an extraordinary amount of pain by using it on Plaintiff's genitals was unreasonable. *See, e.g., Price v. Kramer*, 200 F.3d 1237, 1249 (9th Cir. 2000) (even if there was legal justification for a pat-down search, police officers could not be justified in causing extreme pain by deliberately grabbing, pulling, and squeezing suspects' testicles). Thus, a jury must resolve the issue of Defendant Harvey's intent, or lack thereof, in using the Taser on Plaintiff's genitals; if it was accidental, and the use of a Taser was warranted in the first place, no constitutional violation occurred. *See, e.g., Medina v. Cram*, 252 F.3d 1124, 1132 (10th Cir. 2001) (mere negligence by officer will not support § 1983 claim).

Following the use of the Taser, Plaintiff alleges he passed out from the pain, and woke up to find himself out of the patrol unit, lying on the pavement, with Defendant Harvey on top of him, choking him. Plaintiff states that he was choked until he again passed out. [Doc. 66, Exh. 2, pp. 96-97] Defendant Harvey denies that he ever choked Plaintiff. [Doc. 65, p. 21] Again, this raises a genuine, disputed issue of fact as to the reasonableness of Defendant Harvey's conduct. It would be highly unusual for an officer to choke a suspect until the suspect passed

out, and the only way the Court can conceive such action to be constitutionally reasonable would be if the officer was being physically attacked by the suspect. *See, e.g., Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1154 (10th Cir. 2010) (officer's use of deadly force is justified under the Fourth Amendment if a reasonable officer would have had probable cause to believe that there was a threat of serious physical harm to himself or others). That is not the situation here; either the choking did not happen at all, as Defendant Harvey maintains, or it occurred with Plaintiff handcuffed, lying on his back, posing no physical risk to Defendant Harvey. Again, the jury must resolve this factual dispute in order to decide the excessive-force issue with respect to the choking allegation.

Prior to the alleged choking, there is the issue of how Plaintiff was removed from the patrol unit and how he ended up on the pavement. Plaintiff has no evidence to present on this point; as noted above he maintains he passed out in the patrol unit and woke up to find himself lying on the pavement. Defendant Harvey and Adrian agree as to what occurred: Plaintiff was being removed from the patrol unit, and was squirming so much that Defendants Harvey and Becton lost their hold on him, so that he fell forward onto the pavement. [Doc. 65, pp. 81, 94; Doc. 66, Exh. pp. 38-40] This is an accidental occurrence which, as discussed above, cannot support a § 1983 claim, even though an injury did result – plaintiff's face was scraped, and he began to bleed.

The final application of force by Defendant Harvey occurred while Plaintiff was lying on his stomach outside the patrol unit. Plaintiff does not remember Defendant Harvey applying any force at all to him at that point. [Doc. 66, Exh. 2, p. 100; Doc. 67, Exh. 3, p. 218] Defendant Harvey, on the other hand, testified that he had his knee on Plaintiff's lower back, while Defendant Becton had his on Plaintiff's upper shoulder area. [Doc. 65, p. 95] Obviously, Defendant Harvey's application of force was not too powerful, or Plaintiff would have noticed it.

12

On the other hand, Plaintiff did accuse Defendant Becton of raising his handcuffed arms high behind his back, causing pain, even though he was already handcuffed and lying face down. [Doc. 75, Exh. 1, pp. 97, 99-100]   Plaintiff heard Defendant Becton say words to the effect of, "This is what you get for trying to slip your cuffs."  [*Id.*]  A reasonable factfinder could conclude from this evidence that Defendant Becton was annoyed with Plaintiff for his actions, and gratuitously causing him pain as punishment for those actions.  Defendant Harvey, who was kneeling right next to Defendant Becton, was obviously in a position to prevent this allegedly gratuitous infliction of pain, and could therefore be found liable to the extent Defendant Becton's actions might have violated the Fourth Amendment.  *See  Johnson v. Dist. of Columbia*, *supra*, 528 F.3d at 976-77 (use of force violates Fourth Amendment if it serves no governmental interest); *Mick v. Brewer,* 76 F.3d 1127, 1136 (10th Cir. 1996) (officer who had opportunity to intervene to prevent fellow officer's use of allegedly excessive force against an arrestee may be liable under § 1983).

Based on the foregoing, Defendant Harvey's motion for summary judgment will be denied as to the excessive-force claim, although the jury will not be allowed to award damages with respect to certain applications of force that occurred during the incident.

**City Defendants' Motion to Dismiss:**  As discussed briefly above, this motion will be addressed as a motion or summary judgment rather than a motion to dismiss, as the City Defendants attached exhibits to the motion, Plaintiff attached exhibits to the response, and the Court has considered all of the exhibits in coming to this decision.  *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).  The Court notes Plaintiff treated the motion to dismiss as a motion for summary judgment, so that no party is prejudiced by the Court's conversion of the motion to dismiss to a summary-judgment motion.

13

Plaintiff has claims remaining against Defendant Becton individually, and against the City of Albuquerque and the Albuquerque Police Department based on the theory of municipal liability.  As to the latter two Defendants, summary judgment will be granted.  In order to impose liability on a municipality under § 1983, a plaintiff must present proof of a constitutionally deficient policy or custom.  *See Dodds v. Richardson,* 614 F.3d 1185, 1202 (10th Cir. 2010).  Plaintiff's amended complaint alleges inadequate training, discipline, and supervision on the part of the municipal Defendants.  However, he has completely failed to present any evidence at all concerning training, discipline, supervision, or any other custom or policy that might be relevant to this case.  Therefore, the municipal Defendants are entitled to summary judgment and will be dismissed from the case.

As to Defendant Becton, summary judgment will be granted on the unlawful-search-and-seizure claim for the same reason it will be granted to Defendant Harvey – there is no evidence Defendant Becton had any role in the search of Plaintiff's vehicle.[7]  The only claim remaining against him, therefore, is the excessive-force claim.  The Court will first review the extent to which Defendant Becton might be responsible for Defendant Harvey's applications of force, under the duty-to-prevent doctrine discussed above.  *See  Mick v. Brewer, supra*, 76 F.3d at 1136.  The Court will then address Defendant Becton's own applications of force to Plaintiff.

There is no evidence that Defendant Becton was anywhere near Defendant Harvey and Plaintiff when Harvey pulled Plaintiff's arm, sent him stumbling into the concrete barrier, and then held him against the barrier while handcuffing him behind his back.  Becton does not appear anywhere in the videotape, and no one has placed him in the immediate vicinity; it

---

[7]In addition, to the extent Plaintiff would attempt to assert his newly-raised claim for unlawful seizure of his person against Defendant Becton, as noted above he will not be allowed to do so at this stage of the proceedings.

appears he may have still been in his patrol unit, parked behind Defendant Harvey's unit, during this part of the incident.  Therefore, he had no opportunity to intervene and, even if Defendant Harvey's actions could be considered excessive force, Defendant Becton is not liable for them.  *See id.* (officer may be liable for another officer's actions if he had opportunity to intervene).

Defendant Harvey's other applications of force, including the use of the Taser and the choking, occurred at his patrol unit or next to it.  Defendant Becton testified that prior to the first use of the Taser, he was standing at the rear trunk area of the patrol unit.  [Doc. 76, Exh. 2, p. 52]  He could see Plaintiff's legs sticking out of the unit after Plaintiff sat down.  [*Id.* p. 53]  Therefore, there is an issue of fact as to whether Defendant Becton could see Defendant Harvey standing between Plaintiff's legs, as Plaintiff alleges, and preventing him from getting into the unit, while threatening him with the Taser if he did not obey the command.  If he did see this, given the number of commands Defendant Harvey gave before he finally used the Taser, there is an issue of fact as to whether Defendant Becton had an opportunity to intervene.  Similarly, there appears to be a fact issue as to whether he was close enough to intervene when Defendant Harvey was allegedly choking Plaintiff to the point that Plaintiff passed out.  Summary judgment cannot be granted, therefore, because the duty-to-intervene theory, combined with the disputed facts, could allow a jury to find Defendant Becton liable for Defendant Harvey's allegedly unconstitutional actions.  *See Mick v. Brewer, supra.*

Defendant Becton's own applications of force consisted of the following:  first, he ran around to the other side of Defendant Harvey's unit and pulled Plaintiff into the unit, allowing Harvey to shut the door; second, he allowed Plaintiff to slip out of his grasp while trying to get Plaintiff back out of the unit, so that Plaintiff fell forward onto his face; third, he put his knee on Plaintiff's back and allegedly raised Plaintiff's arms high enough to cause pain, while telling Plaintiff that's what he got for trying to slip his cuffs.  [Doc. 76, Exh. 2, pp. 64-65;  Doc. 65, pp.

15

81, 94; Doc. 66, Exh. pp. 38-40; Doc. 75, Exh. 1, pp. 97, 99-100]  The first application of force did not harm Plaintiff at all, and in fact may have helped him avoid further applications of the Taser, because it got him into the patrol unit.  The second, as discussed previously, was accidental and cannot give rise to § 1983 liability.

This leaves only the third application of force, the knee to Plaintiff's back and the raising of his arms.  Again, as discussed concerning Defendant Harvey, a gratuitous application of force, that causes pain and does not serve any governmental interest, is a violation of the Fourth Amendment.  Given the facts that Plaintiff was handcuffed, face down with two officers' knees on his back, and that Defendant Becton made a comment (which he admits making) that could be construed to mean he was inflicting pain upon Plaintiff to punish Plaintiff, a jury could find there was no governmental interest in raising his arms sufficiently high that it caused pain.[8]

Pursuant to the above discussion, Defendant Becton's motion for summary judgment will be denied as to certain of Defendant Harvey's actions, where there is a question of fact as to whether Becton could have intervened to prevent those actions.  Summary judgment will also be denied as to Defendant Becton's own alleged act of raising Plaintiff's arms high enough to cause pain, after Plaintiff was allegedly subdued and handcuffed.

**Conclusion**

Based on the foregoing, the motions for summary judgment filed by Defendants will be granted in part and denied in part.  The only Defendants remaining in the case are Defendants Harvey and Becton, and the only claims remaining are the excessive-force claims against these two individual Defendants.

---

[8]This situation should be distinguished from Defendant Harvey's alleged raising of Plaintiff's arms while handcuffing him.  That action was momentary, as shown by the video; and necessary, as it was done to apply the handcuffs.  Defendant Becton's alleged actions, however, occurred after Plaintiff was already handcuffed and subdued.

Dated this 25th day of May, 2011.

BRUCE D. BLACK
United States District Judge